IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

JEFFREY SARTINI,

                           Plaintiff,

      v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                        Defendant.

OPINION AND ORDER

22-cv-67-slc

_____

Plaintiff Jeffrey Sartini brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of an adverse decision of the acting commissioner of Social Security. Sartini argues that the administrative law judge (ALJ) who reviewed his claim at the administrative level erred by: (1) failing to properly evaluate the medical opinions; and (2) failing to adequately explain the basis for his conclusion that Sartini could perform a limited range of sedentary work. As explained below, neither of these arguments is persuasive. Accordingly, I will affirm the acting commissioner's decision.

FACTS

The following facts are drawn from the administrative record ("AR"), filed with the acting commissioner's answer, dkt. 9:

## I.  Background

Sartini applied for disability insurance benefits on October 12, 2017, at the age of 44. He has a bachelor's degree in mass communications and has worked in the past as a grants and communications coordinator and as a customs specialist. Sartini alleged that he had been disabled since October 2014 from back problems that began when he hurt his back while moving boxes. AR 333-45.  In February 2017, he had surgery to repair a herniated disc. Although the surgery went well, the disc re-herniated six weeks later. In May 2017, Sartini had a second operation on his lumbar spine.  Although it improved Sartini's pain and functioning, it did not

restore him to his prior level of functioning nor did it relieve him of all of his pain. Sartini continued to seek relief from his health care providers, who established a conservative treatment plan consisting of physical therapy, home exercises, osteopathic manipulative treatment, lidocaine patches, lumbar support, voltaren gel, a facet point injection, an epidural injection, and anti-inflammatory, nerve pain, and muscle relaxant medication. Sartini says his lingering back problems prevent him from performing any kind of work on a full time basis.

The state disability agency disagreed, denying Sartini's claim initially and on reconsideration. Consulting physicians who evaluated Sartini's claim, Drs. Khorshidi and Walcott, were of the opinion that Sartini was capable of performing work at the light level of exertion (lifting 10 pounds frequently and 20 pounds occasionally, with the ability to sit or stand/walk for about six hours in an eight-hour day), with limits on postural activities like bending, climbing ladders and crouching. (The only difference between the opinions is that Dr. Walcott thought Sartini could crouch frequently, while Dr. Khorshidi thought he could do so only occasionally. AR 69, 82.)

In July 2018, Sartini began seeing Dr. Maya Battikha, a physical medicine and rehabilitation doctor, for his chronic low back pain. On October 4, 2019, Dr. Battikha completed a lumbar spine work capacity questionnaire on which she opined, among other things, that: (1) Sartini could sit or stand for only 20 minutes at one time before having to change position; (2) Sartini could only sit and stand for less than two hours total in an eight-hour day; (3) Sartini could frequently lift less than 10 pounds and occasionally lift 10 pounds; and (4) he was likely to be absent about one day a month because of his impairments or treatments. AR 1043-49.

After his claim was denied at the local level, Sartini requested an administrative hearing, which was held by video on July 14, 2021, before Administrative Law Judge David Skidmore. Sartini, who was represented by counsel, testified, as did neutral vocational expert Lisa Gagliano.

2

Sartini testified that he had some improvement after the second surgery, but then hit a plateau. AR 42. He reported constant bilateral lower back pain, occasional nerve pain down his right leg, and pain across his mid- to upper back while sitting. *Id*. Sartini testified that he could sit or stand for about 20 minutes each without experiencing pain, and if he sat or stood for more than two hours, he would develop the pain in his right leg. AR 43. To alleviate the leg pain, Sartini would lie down for about an hour, after which he could resume some activities for brief duration. He also took amitriptyline and cyclobenzaprine as needed at night, and ibuprofen or tylenol occasionally. AR 44.

The ALJ called Gagliano to testify as a neutral vocational expert. Gagliano testified that Sartini's past jobs as a customs specialist and a grant writer were both skilled jobs that were generally performed at the sedentary exertional level. AR 55. The ALJ proposed a hypothetical incorporating a number of limitations that would he would ultimately adopt as the operative residual functional capacity finding. Specifically, he asked Gagliano to assume a person of Sartini's age, education, and past work experience, who was capable of performing work at the sedentary exertional level with the following additional limitations:

> Occasional ramp and stair climbing; no ladder, rope or scaffold climbing; occasional stooping, kneeling, crouching and crawling; and must be permitted to alternate into a standing position once an hour for five minutes.

AR 57-58. Gagliano testified that a person with such limitations would be able to perform Sartini's past relevant work as it was generally performed in the national economy. AR 58. Gagliano further testified that if the hypothetical was modified to require the ability to change positions from sitting to standing every 20 minutes, then the person would not be able to perform either of Sartini's past jobs. AR 58. According to Gagliano, "these are sedentary jobs and the workstations are not set up to allow a person to be productive in a standing position for prolonged period of time." AR 59.

## II. ALJ Decision

On August 18, 2021, the ALJ issued a decision denying Sartini's application. AR 14-25. The ALJ found that although Sartini had severe degenerative disease of the lumbar spine, he remained capable of performing sedentary work so long as he could stand for five minutes every hour. (The ALJ imposed some other limitations on Sartini's ability to perform postural activities like stooping, crouching, and crawling, but I do not understand Sartini to be contesting those findings.)

In reaching this conclusion, the ALJ divided his evaluation broadly into two time periods: (1) from the alleged onset date in 2014 up until Sartini's successive disc surgeries in 2017; and (2) from the 2017 surgeries until December 31, 2019, which was the last date on which Sartini was eligible for disability insurance benefits. Examining the first time period, the ALJ noted that although Sartini complained of back pain and had been diagnosed with degenerative disc disease with right-sided L5 radiculopathy, he had "notably high levels of functioning." Specifically, Sartini reported riding a bike for 20-30 miles, taking a trip to Costa Rica, camping, snow shoeing, walking his dog, spending a lot of time on his feet at a family reunion, driving to South Carolina, and mowing the lawn. AR 20.

For the period after the back surgeries in February and May 2017, the ALJ found that Sartini's alleged symptoms were not fully consistent with the objective medical evidence, his treatment history, or his daily activities. AR 23. The ALJ found that Sartini's treatment providers regularly observed that he had a normal or slightly diminished gait, appropriate muscle strength, range of motion and neurologic capabilities in his lumbar spine and extremities. In addition, apart from the surgical interventions, Sartini's treatment was fairly conservative, consisting mainly of medication management, physical therapy, and medical monitoring, "with few recommendations for more aggressive treatment modalities." AR 23. The ALJ also pointed out that Sartini had reported to his health care providers and physical therapists in late 2017

that his tolerance for activity was improving: he could walk two miles with a short rest, sit for 45 minutes, ride in a car for two hours, do some yard work, grocery shop, and had improved mobility in his lumbar spine. In September 2017 he reported he was planning a trip to Disneyland.  In October 2017, he reported that his pain overall was 2 out of 10, and he was doing well. AR 21. As for daily activities, the ALJ noted that Sartini reported being able to attend to his personal care, make simple meals, help care for his two dogs and a cat, perform light household chores, shop for light groceries and travel to his various medical appointments. In addition, he played video games "daily and often." AR 23.  All of this evidence, found the ALJ, was inconsistent with Sartini's allegations of total disability and instead supported the conclusion that he could perform a limited range of sedentary work.

Addressing the medical opinions, the ALJ was not persuaded by Dr. Battikha's opinion that Sartini's back condition prevented him from performing even sedentary work on a full time basis. The ALJ explained that Dr. Battikha's opinion was inconsistent with the conservative treatments she had recommended and with numerous physical examinations, include Dr. Battikha's, finding that Sartini had normal gait, sensation, and lower extremity strength and no difficulty heel or toe walking. AR 23. The ALJ also noted that Dr. Battikha's opinion dated back only to July 1, 2018 and was not intended to cover Sartini's entire period of alleged disability. AR 23.

The ALJ found "somewhat persuasive" the opinions from the state agency physician consultants who found that Sartini could perform light work. The ALJ noted that they were medical specialists with an understanding of the social security disability program and its evidentiary requirements, they had thoroughly reviewed the bulk of the available medical evidence in the record, and their opinions that Sartini was not disabled were generally consistent with the medical evidence as a whole, which "fail[ed] to show disabling pathologies." AR 22. However, the ALJ did not fully credit their opinion that Sartini could perform light work. Instead, he found Sartini capable of only sedentary work, explaining that he had credited

Sartini's allegations "to a certain extent that he could not lift, carry, or stand/walk at the requirements of the light exertional level." AR 22.

Finally, relying on the testimony of the vocational expert, the ALJ concluded that Sartini was not disabled because he remained capable of performing his past work as a grant writer or customs agent, both of which were performed at the sedentary level. AR 24.

OPINION

In reviewing an ALJ's decision, this court is limited to determining whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This deferential standard of review means that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022) (noting substantial evidence is not high threshold: "[w]e will affirm ALJ decisions to deny disability benefits when the ALJ follows applicable law and supports its conclusions with substantial evidence."). We also do not "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must ... explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."). The plaintiff bears the burden of proving that he is disabled. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

6

Sartini contends that the ALJ erred by: (1) failing to properly evaluate the medical opinions; and (2) failing to adequately explain the basis for his conclusion that Sartini could perform a limited range of sedentary work.

## I. Evaluation of Medical Opinions

Under the regulations applicable to Sartini's benefits application, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (evaluating opinion evidence for claims filed after March 27, 2017). Instead, the "most important factors" in weighing a medical source's opinions now are supportability and consistency. § 404.1520c(b)(2). As for supportability, the regulations state: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." § 404.1520c(c)(1). As for consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." § 404.1520c(c)(2). Finally, an ALJ may, but is not required to, explain how he considered the source's relationship with the claimant, specialization, and any other relevant factors. § 404.1520c(b)(1) and (2) and (c)(3)-(5).

Two of Sartini's challenges to the ALJ's assessment of the medical opinions can be dismissed at the outset. First, the Acting Commissioner's updated rules for evaluating medical evidence do not demand a greater level of articulation by ALJs than was required by the old rules. *Gremler v. Kijakazi*, No. 22-CV-27-SLC, 2023 WL 2180533, at *2–3 (W.D. Wis. Feb. 23, 2023) (rejecting same argument). Second, even though Dr. Battikha was Sartini's treating physician, the ALJ was "not required to articulate exactly how he accounted for that relationship

in his final decision, so long as he properly articulated his consistency and supportability analyses." *Bakke v. Kijakazi*, ___ F.4th ___, Case No. 22-2236, 2023 WL 2473109, at *5 (7th Cir. Mar. 13, 2023) (citing § 404.1520c(b)(2)). Thus, the sole issue for the court is whether the ALJ's rationale for the weight he gave to the medical opinions is both discernible and adequately supported by the administrative record.

It was. As the ALJ explained, he did not find Dr. Battikha's opinions persuasive because (a) they were inconsistent with the conservative treatment she provided to Sartini, which consisted primarily of medications and physical therapy, with one referral for a lumbar spine facet joint steroid injection; and (b) they were inconsistent with her own and other doctors' clinical observations of Sartini, which noted few abnormalities apart from limited lumbar spine range of motion. Sartini does not contest the accuracy of these findings, which the ALJ supported with citations to the record. Instead he argues that the ALJ's analysis failed to account for a January 2018 MRI of the lumbar spine, which Dr. Battikha cited in her treatment notes. According to Dr. Battikha, Sartini's January 2018 MRI

> reveals evidence for disc degenerative changes are [sic] all levels in the lumbar spine. Of particular note at L4-5 there is [sic] been previous surgery. Although there is a residual bulge of the narrowed disc. Doesn't appear to produce significant stenosis but there does appear to be considerable epidural enhancement around the thecal sac at this level indicating epidural fibrosis. This also extends into the intervertebral neural foramen on the right side. I do not see evidence suggesting a recurrent or residual disc extrusion.

> AR 1032, 1037.

In Sartini's view, the MRI provided critical support for Dr. Battikha's restrictive assessment of Sartini's functional abilities, and the ALJ was not qualified to evaluate the significance of the MRI without a medical expert. *See, e.g., Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ's cannot interpret medical findings).

Sartini's argument is not persuasive. As this court has emphasized, the rule that an ALJ may not interpret evidence that is beyond the abilities of a lay person to understand "doesn't preclude the ALJ from using common sense to evaluate all the evidence, including medical records." *Callaway v. Saul*, No. 19-CV-818-JDP, 2020 WL 2214385, at *2 (W.D. Wis. May 7, 2020) (citations omitted). Here, although the ALJ correctly noted that the January 2018 MRI did not suggest a recurrent or residual disc extrusion, he did not purport to interpret the MRI or draw his own conclusions from it as a basis to reject Dr. Batthika's opinion. Instead, the ALJ relied on Sartini's own doctors, *including* Dr. Batthika, who, in spite of the MRI findings, found Sartini to have fewer limitations than before his 2017 surgeries and continued to recommend conservative treatment, including ibuprofen and muscle relaxant medication, physical therapy, and one referral for a lumbar facet joint steroid injection.

Further, Sartini's physical examinations detected few signs of a disabling impairment: Sartini had limited lumbar range of motion, but otherwise had normal gait, normal sensation, full muscle strength and no difficulty heel or toe walking.

The ALJ was entitled to consider the totality of this evidence in deciding whether Dr. Battikha's opinion was consistent with the evidence as a whole. He concluded that overall, the medical evidence was inconsistent with the restrictive limitations the doctor endorsed. *See Karr*, 989 F.3d at 513 (affirming the rejection of one doctor's opinion as "extreme" in light of the other evidence in the record, even though that doctor had reviewed at least one MRI that no other doctor had reviewed); *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *3 (7th Cir. Dec. 21, 2021) (ALJ reasonably assigned little weight to treating doctor's opinion, who generally charted normal findings while evaluating and treating the plaintiff). Because that conclusion reflects a reasonable resolution of conflicting evidence in the record, this court cannot disturb it.

Sartini also criticizes the ALJ's assessment of the state agency opinions, but his objections in this regard require little discussion. Contrary to his argument, the ALJ plainly complied with

the regulation. He said that he found the agency opinions "somewhat persuasive" and he cited logical, accurate reasons why:  they were medical specialists with an understanding of the social security disability program and its evidentiary requirements, they had thoroughly reviewed the bulk of the available medical evidence in the record, and their opinions that Sartini was not disabled was generally consistent with the medical evidence as a whole, which "fail[ed] to show disabling pathologies." AR 22.  The ALJ complied with his obligation to explain his findings on supportability and consistency and his conclusions are rationally supported by the record, precluding second-guessing by this court.

More fundamentally, however, Sartini has not explained how any error by the ALJ in evaluating the state agency opinions was harmful, given that the ALJ did not adopt their findings but instead gave partial credit to Sartini's subjective complaints and found that he had *greater* limitations than the state agency doctors had found.  *See, e.g., Palmer v. Saul*, 779 F. App'x 394, 398 (7th Cir. 2019) ("It is true that the ALJ said little about the state's non-examining physicians, but  . . . the ALJ's RFC findings were more restrictive than the conclusions of those non-examining physicians, and Palmer does not explain how a more restrictive RFC could have negatively affected his claim."); *Karr*, 989 F.3d at 513 (even where ALJ commits legal error, remand not required if ALJ would reach same result on remand).  Because the result would not change even if the ALJ reevaluated the state agency opinions, it would be pointless to remand the case for that reason.

In sum, the ALJ properly evaluated the medical opinions in accordance with the regulation and cited logical reasons, supported by the record, for his conclusions. Remand is not warranted on this issue.

## II. RFC Determination

Sartini next contends that the ALJ erred in assessing Sartini's RFC.  As discussed above, the ALJ did not adopt any one doctor's opinion about Sartini's limitations.  *See Schmidt v. Astrue*,

496 F.3d 833, 845 (7ᵗʰ Cir. 2007) (ALJ need not adopt a particular medical opinion to support the RFC). As a result, Sartini says that the ALJ needed to explain why he found that Sartini (1) was capable of performing sedentary work; and (2) must be permitted to alternate from sitting into a standing position once per hour for five minutes.

Sartini is correct that the ALJ did not expressly tie these conclusions to specific evidence in the record. But Sartini had the burden to show that his impairments required more significant restrictions. *Karr*, 989 F.3d at 513 (plaintiff, not the ALJ, ultimately "bears the burden of proving that she is disabled" by "identifying any objective evidence in the record corroborating" her allegations); *Sosh v. Saul*, 818 F. App'x 542, 546 (7ᵗʰ Cir. 2020) ("A claimant who does not 'identify medical evidence that would justify further restrictions' is not entitled to remand.") (quoting *Loveless v. Colvin*, 810 F.3d 502, 508 (7ᵗʰ Cir. 2016)).  Sartini has not identified any unaddressed evidence that shows he would be entitled to more significant limitations than the ALJ found.  The only specific medical evidence supporting his claim that he cannot perform even sedentary work or needs a sit/stand option more frequently than five minutes every hour was Dr. Batthika's opinion; I already have explained why the ALJ did not err in rejecting that evidence.

The only other evidence consists of Sartini's subjective complaints, but complaints alone are not proof of disability.  *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7ᵗʰ Cir. 2022) ("Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence.") (citing 42 U.S.C. § 423(d)(5)(A).  The ALJ reasonably declined to fully credit Sartini's allegations of disabling limitations for the same reasons that he rejected Dr. Batthika's opinion:  they were inconsistent with the objective medical evidence, with his course of treatment, and with his reported improvement following surgery and physical therapy.  In addition, the ALJ reasonably found that Sartini's subjective allegations of total disability were undermined by his activities of daily living, which included attending to his personal care, making simple meals, helping take care of his two dogs and a cat, performing light household chores, functioning independently outside the home

(including grocery shopping and attending medical appointments), and playing video games –
presumably while seated – "daily and often." AR 23.  This assessment, which Sartini has not
challenged[1], lends further support to the ALJ's conclusion that Sartini was capable of a range of
sedentary work.

## III.  Conclusion

In sum, Sartini has failed to show that the ALJ committed any harmful legal errors or that
his decision that Sartini is not disabled is not supported by substantial evidence. Although I
empathize with Sartini's ongoing challenges, I conclude that he has failed to meet the stringent
standard for an award of disability under the Social Security Act.

## ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner
of Social Security, is AFFIRMED.  The clerk of court is directed to enter judgment for defendant
and close this case.

Entered this 30th day of March, 2023.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

---

[1]Sartini belatedly raises some objections to the ALJ's credibility finding in his reply brief, but I
have not considered those arguments. *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527
(7th Cir. 2013)(arguments are waived if not raised in opening brief).